**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

DANIEL J. MORENO,

        Plaintiff,

v.                                  Case No. 20-13292

ERIC LINDBLADE,

        Defendant.

_____/

### OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR DISMISSAL AND IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

At this stage in the proceedings, two *Bivens*[1] claims remain against Defendant Eric Lindblade for alleged violations of Plaintiff Daniel J. Moreno's Fourth Amendment rights during the execution of a residential search warrant in December of 2017. Plaintiff alleges that Defendant violated his Fourth Amendment rights by leading an unreasonable search, being directly involved in an unreasonable seizure, using excessive force while handcuffing him, and failing to intervene when other officers allegedly conducted an unreasonable search and seizure. (ECF Nos. 1 & 45.) Defendant counters that Plaintiff's claims should be dismissed in their entirety as a discovery sanction and alternatively asserts a qualified immunity defense as well as factual deficiency arguments. (ECF No. 39.) Pending before the court is Defendant's Motion for Dismissal and in the Alternative for Summary Judgment. (Id.) The motion has been fully briefed. The court finds oral argument to be unnecessary. E.D. Mich. LR

---

[1] *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

7.1(f)(2). For reasons explained below, the court will deny Defendant's request for dismissal under Federal Rule of Civil Procedure 37 and will grant in part and deny in part Defendant's remaining motion for summary judgment.

## I. BACKGROUND

In November of 2017, Plaintiff's brother, Anthony Gignac, was arrested on a litany of federal charges for orchestrating a scheme in which he impersonated Saudi Prince Khalid Al-Saud to defraud the owners of the Fontainebleau hotel in Miami, Florida. (ECF No. 39, PageID.404; ECF No. 45, PageID.593.) Further investigation of these criminal activities led authorities to believe that Plaintiff's residence contained evidence and instrumentalities of Gignac's schemes. (Id.) In mid-December of 2017, Defendant, a Novi police officer then assigned to the Drug Enforcement Agency (DEA), filed an application in the Eastern District of Michigan for a search warrant targeting Plaintiff's residence.[2] On December 12, 2017, Magistrate Judge R. Steven Whalen authorized a search warrant.[3] (ECF No. 39, PageID.405.)

### A. The Search

On December 14, 2017, Defendant led a team of state and federal officers in the execution of the warrant for Plaintiff's residence located at 7238 South Merrybrook Drive, West Bloomfield, Michigan. (ECF No. 39, PageID.404; ECF No. 45, PageID.593.)

---

[2] Search warrants were also sought and authorized for three units Plaintiff rented in self-storage facilities throughout metro Detroit. (ECF No. 1, PageID.7.) The execution of those warrants is not at issue in this case.

[3] See In Re: Search/Seizure Warrant Matter, 2:17-mc-51664 (Dec. 12, 2017). It should further be noted that Defendant produced the search warrant for one of the storage facilities. (ECF No. 40 *Sealed*.) However, given that the only substantive difference is the address listed for search, and the court's access to the true warrant to verify as such, as well as a lack of any objection from Plaintiff, the court will proceed without requiring correction of the same.

Defendant and his team forcefully entered Plaintiff's residence at approximately 6:30 a.m.[4] (ECF No. 39, PageID.406; ECF No. 45, PageID.595.) While the parties dispute whether a no-knock entry method was used, it is undisputed that Plaintiff was at or near the entrance when the front door was breached. (Id.; ECF No. 45, PageID.596.) Once inside, Defendant encountered Plaintiff face-down on the ground, so-positioned either due to him slipping or under officer direction. (Id.) Though the parties dispute the exact manner in which Plaintiff was handled, it is undisputed that Defendant placed Plaintiff in handcuffs, pulled him to his feet, and deposited him in a dining room chair. (ECF No. 39-6, PageID.480; ECF No. 45-3, PageID.620–21.) Plaintiff remained handcuffed in the dining room chair for the duration of the two-to-three-hour search. (Id.)

While the search was ongoing, Plaintiff asserts that unnamed officers questioned him about the presence of narcotics in the residence. (ECF No. 45-3, PageID.622–23.) It is undisputed that the search warrant did not authorize a search for narcotics, nor did Defendant indicate that narcotics were among the items sought in his affidavit supporting his warrant application. (ECF No. 40 *Sealed*.) It is further undisputed that a canine unit, handled by West Bloomfield Police Department K9 Officer Jim Geary, was on scene during the search. (ECF No. 39-4, PageID.452.) Plaintiff asserts that he made multiple complaints regarding the tightness of his handcuffs to attendant officers and was ignored or threatened with obstruction charges. (ECF No. 45-3, PageID.624.) For his part, Defendant claims that, "At one point in time Moreno complained to me that the

---

[4] Plaintiff admitted in discovery that the search took place at approximately 6:30 a.m., that is, within the time frame authorized by the search warrant, while Defendant claims the time was 7:05 a.m. (ECF No. 39-7, PageID.484) The thirty-five minute discrepancy is immaterial to the court's resolution of this motion.

handcuffs were too tight so I removed the handcuffs from Moreno to let him stretch his arms. The handcuffs were then reapplied and checked to make sure that they were not too." [sic] (ECF No. 39-6, PageID.480.)

At approximately 9:30 a.m., the search concluded. (ECF No. 39-6, PageID.480.) Ultimately, the officers involved recovered and seized several items, including documents, electronic devices, and hard drives. (ECF No. 39-8, PageID.488–89.) Before departing, Defendant provided Plaintiff with the search warrant, without the sealed supporting attachments, and an inventory list of the items seized. (ECF No. 39-6, PageID.480; ECF 45-3, PageID.625–26.) Plaintiff did not, and does not, dispute the propriety of the search for and seizure of those items. Defendant further informed Plaintiff that he would not be seizing $3,700.00 in U.S. currency found during the search. (Id.) However, Defendant's former co-defendant, Officer Jason Modrzejewski, was present and indicated his intent to seize the $3,700.00 under Michigan's drug forfeiture statute, Mich. Comp. Laws § 333.7521, providing Plaintiff notice of the same. (ECF No. 45-3, PageID.626; ECF No. 45-5, PageID.632.) Plaintiff ultimately recovered the currency from Sterling Heights Police Department several days later. (Id.)

**B. Relevant Procedural History**

Plaintiff initially filed suit against Defendant, Jason Modrzejewski, John Doe #1, John Does #2-8 (Seven Unnamed Federal Agents), John Does #9-13 (Five Unnamed Federal Attorneys), and the City of Sterling Heights, Michigan, asserting in a six-count complaint various *Bivens* actions and 42 U.S.C. § 1983 claims. (ECF No. 1.) The John Doe defendants were all dismissed as part of the court's ruling on Plaintiff's motion for leave to file an amended complaint (ECF No. 28). (*See* ECF No. 34.) Most recently, on

September 28, 2022, Plaintiff entered into a stipulated dismissal order with respect to

Defendants Modrzejewski, the City of Sterling Heights, and John Doe #1.[5] Thus, the

only claims remaining for adjudication are those lodged against Defendant: Count I,

"Violation of Fourth Amendment Rights – *Bivens*"; and Count VI, "Violation of Fourth

Amendment Rights – *Bivens* Failure to Intervene." (*See* ECF No. 1.)

As part of his motion pending before the court, Defendant seeks discovery

sanctions in the form of a dismissal under Federal Rule of Civil Procedure

37(b)(2)(A)(v). Thus, certain history with respect to discovery in this case must be

discussed. Specifically, Defendant focuses on Plaintiff's failure to respond to

interrogatories and requests for production of documents sought by former Defendants

Modrzejewski and the City of Sterling Heights, initially issued to Plaintiff on March 24,

2022. On April 27, 2022, due to Plaintiff's failure to timely respond to the interrogatories

and document request, the parties entered into a stipulated order, wherein Plaintiff

would serve responses by May 2, 2022. (ECF No. 30.) On June 6, 2022, due to

Plaintiff's second failure to timely respond, the parties entered into a stipulated order

compelling discovery responses by June 14, 2022. (ECF No. 35.) Plaintiff again failed to

do so. (*See* ECF No. 38, PageID.366.) Part of the requested discovery sought

information as to any alleged injuries Plaintiff sustained during his encounter with

officers during the search, including a detailed description of the injuries, medical

records for any treatment sought, and medical records and documents related to

Plaintiff's medical conditions from the past seven years. (ECF No. 39-5, PageID.472.)

---

[5] Though ultimately inconsequential, it is unclear why the parties stipulated to the dismissal of John Doe #1, given the court's previous order already accounting for the same. (*See* ECF No. 34.)

## II. STANDARD

### A. Motion to Dismiss Under Federal Rule of Civil Procedure 37

Federal Rule of Civil Procedure 37(b)(2)(A) permits the court to issue "further just orders" when a party "fails to obey an order to provide or permit discovery," including the following:

> **(i)** directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> **(ii)** prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> **(iii)** striking pleadings in whole or in part;
>
> **(iv)** staying further proceedings until the order is obeyed;
>
> **(v)** dismissing the action or proceeding in whole or in part;
>
> **(vi)** rendering a default judgment against the disobedient party; or
>
> **(vii)** treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Thus, once a discovery failure has been established, the sanctioning decision is within the sound discretion of the court.

In assessing a district court's decision to invoke discovery sanctions, including dismissal of the complaint, the court considers four factors: "(1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366–67 (6th Cir. 1997) (internal citations omitted).

## B. Motion for Summary Judgment

To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). First, the moving party bears the initial burden of presentation that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no requirement, however, that the moving party "support its motion with [evidence] negating the opponent's claim." *Id.* (emphasis removed); *see also Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995).

Second, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis removed) (quoting Fed. R. Civ. P. 56(e)). This requires more than a "mere existence of a scintilla of evidence" or "'[t]he mere possibility of a factual dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). For a court to deny summary judgment, "the evidence [must be] such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. All reasonable inferences from the underlying facts must be drawn "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015).

## III. DISCUSSION

Defendant makes two, general arguments for judgment in his favor. The first is that dismissal is an appropriate discovery sanction for Plaintiff's failure to comply with

the court's June 6, 2022 stipulated order compelling discovery. The second is that

Defendant is entitled to summary judgment on all claims against him, either on qualified

immunity grounds or due to an utter lack of evidentiary support for Plaintiff's claims. The

court will address both arguments in turn.

### A. Defendant's Motion to Dismiss

Defendant requests that the court impose discovery sanctions up to and

including dismissal of this action for Plaintiff's failure to submit responses to

interrogatories and requests for document production made by Modrzejewski and the

City of Sterling Heights. (*See* ECF No. 39-5.) Defendant argues that, while the

discovery requests were not his, Rule 37(b)(2) has no standing limitation on what party

can move for discovery sanctions, citing the persuasive authority of *Payne v. Exxon

Corp.*, 121 F.3d 503, 510 (9th Cir. 1997). As such, Defendant contends that he can

properly bring his request for sanctions before the court.

Plaintiff counters that dismissal under Rule 37 would be both unnecessary and

disproportionate, accusing Defendant of "lying in wait on this issue." (ECF No. 45,

PageID.614.) Plaintiff asserts that he maintained a constructive dialogue regarding

resolution with Modrzejewski and the City of Sterling Heights following the court's June

3, 2022 decision, (s*ee* ECF No. 34.), during which sanctions were not threatened. (Id.)

Plaintiff further notes that Defendant makes no attempt to articulate any meaningful

prejudice. Finally, Plaintiff asserts that no documentary evidence of medical treatment

was provided in discovery because treatment was not warranted for Plaintiff's injuries.

While the court does not countenance any party's failure to abide by a direct

order, let alone Plaintiff's in this case, the court is inclined to agree with Plaintiff that

outright dismissal is too extreme a response under these circumstances. "Dismissal is the sanction of last resort." *Beil v. Lakewood Engineering and Mfg. Co.*, 15 F.3d 546, 552 (1994). Here, a review of the record reflects that Plaintiff has been granted a few extensions *by opposing counsel* throughout the pendency of this case. (*See* ECF. Nos. 30, 35, 43, 44.) Beyond those, Plaintiff essentially missed a single discovery deadline. As such, the court does not find a clear record of delay or contumacious conduct with respect to discovery failings so egregious that it warrants dismissal. *See Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366–67 (6th Cir. 1997).

Perhaps more importantly, Defendant makes no effort to articulate any prejudice he suffered from Plaintiff's failure. If anything, the lack of production of documentary evidence supporting his claims hurts Plaintiff more than it does Defendant. Further, there is no history of Plaintiff being warned that a failure to respond would result in dismissal. Rather, the court itself contemplated a scenario in which discovery could be extended should the parties require it. (ECF No. 34.) Finally, less drastic sanctions are available for dealing with Plaintiff's non-compliance, including prohibiting Plaintiff from supporting his claims of injury or from introducing evidence of the same.[6] FED. R. CIV. P. 37(b)(2)(A)(ii). As such, Defendant's request for dismissal under Rule 37 is denied.

## B. Defendant's Motion for Summary Judgment

Defendant's more substantive arguments are those made invoking qualified immunity and/or a general lack of evidence sufficient to survive summary judgment.

---

[6] The court is specifically contemplating prohibiting the introduction of any evidence by Plaintiff regarding his alleged knee injury, reportedly aggravated by Defendant when lifting him from the ground after handcuffing him, particularly because Plaintiff first makes mention of his knee issues in his responsive brief to this pending motion.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In analyzing a party's entitlement to qualified immunity, the Supreme Court has noted: "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Several years later, the Supreme Court further honed its qualified immunity analysis, providing that "judges . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "Each Defendant's liability must be assessed individually based on his or her own actions." *Pollard v. City of Columbus*, 780 F.3d 395, 402 (6th Cir. 2015).

### 1. Count I: Individual Liability

In Count I of his complaint, Plaintiff asserts that he is entitled to relief under *Bivens*, because Defendant, while acting in his capacity as a federal agent, violated his Fourth Amendment rights to be free from unreasonable searches, unreasonable seizures, and unreasonable use of force. (ECF No. 1.) Defendant contends that he is entitled to qualified immunity as to the allegations of an unlawful search and seizure and that he is entitled to summary judgment as to the allegations of excessive force because

Plaintiff has not produced sufficient evidence of physical injury. The court will evaluate each argument in turn.

### a. Unlawful Search

Defendant argues that he is entitled to qualified immunity with respect to the search of Plaintiff's residence because it was lawfully performed under the authority of a search warrant. (ECF No. 39, PageID.413.) In so arguing, Defendant relies primarily on *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012), which stands for the general proposition that a *Bivens* action for a Fourth Amendment claim of an unreasonable search will not stand against an officer reasonably acting under the authority of a search warrant reviewed and issued by a magistrate judge. (Id.) In his reply brief, Defendant also argues that Plaintiff cannot establish a clear constitutional violation due to the presence of a canine officer during the execution of a lawful warrant, contending that a canine sniff is not a search within the meaning of the Fourth Amendment under *United States v. Reed*, 141 F.3d 644, 650 (6th Cir. 1998). (ECF No. 46.)

Plaintiff counters that Defendant's argument misses the mark. (ECF No. 45, PageID.602.) While conceding that Defendant may have had probable cause for some search of his residence, Plaintiff argues that Defendant's execution of the search warrant was nevertheless unreasonable because it exceeded the scope authorized. (Id. at PageID.602–03.) Specifically, Plaintiff takes issue with what he characterizes was a "generalized narcotics search" conducted of his residence. (Id. at PageID.603.) As support for this assertion, Plaintiff points to the presence of a drug-sniffing dog and its handler on the scene and the questions he was asked by other officers regarding the presence of narcotics in the home. (Id.; ECF No. 45-3, PageID.622–23.) Without

11

offering any legal argument in support, Plaintiff contends that the use of a canine unit on the scene constituted an unreasonable search because Defendant and his team of officers were not authorized to search for narcotics. (ECF No. 45, PageID.603–04.) Plaintiff further attributes the canine's presence and the other officers' questions regarding narcotics to Defendant due to his capacity as lead officer of the warrant execution, again without any legal support. (Id.) Separately, and more individualized to Defendant, Plaintiff relies on *Baranski et al. v. Fifteen Unknown ATF Agents*, 452 F.3d 453 (6th Cir. 2006), to argue that Defendant conducted an unreasonable search by refusing to produce the attachments referenced in the search warrant, to identify the crimes being investigated, and to orally describe the items being searched for.

"The right to be free from unreasonable searches and seizures is clearly established, *Graham v. Connor*, 490 U.S. 386, 392–93, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), and the reasonableness of a search or seizure is evaluated based on a totality of the circumstances, *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996)." *Baranski*, 452 F.3d at 445." *Greer v. City of Highland Park, Mich.*, 884 F.3d 310, 316 (2018). Here, the parties dispute whether a constitutional violation occurred with respect to the reasonableness of search conducted.

In resolving that dispute, the court will first dispatch with Plaintiff's claims of unreasonableness based on Defendant's failure to produce the warrant attachments, to identify the crimes being investigated, and to orally describe the items sought. Plaintiff's reliance on *Baranski* is misplaced. First, where the affiant is at the scene, the warrant is validly approved, and the search is confined to the approved corners of the warrant, the search is valid despite the absence of attachments referenced in the warrant. *Frisby v.*

*United States*, 79 F.3d 29, 31–32 (6th Cir. 1996). Here, it is undisputed that Defendant, the affiant, was on scene during the execution of the search warrant for Plaintiff's residence, Magistrate Judge Whalen validly approved the warrant, and the search was limited to the four corners of the warrant, that is, a search of Plaintiff's entire residence. (ECF No. 39, PageID.479–80.)

Further, while Federal Rule of Criminal Procedure 41(d) requires officers to provide a copy of the warrant and receipt of items taken, it makes no mention of the underlying criminal activity investigated nor did the *Baranski* Court find such a disclosure required. Thus, Plaintiff is not entitled to know the underlying criminal charges being investigated. Moreover, although "the procedural steps enumerated in Rule 41(d) are important and should not be disregarded, they are ministerial and absent a showing of prejudice, irregularities in these procedures do not void an otherwise valid search." *Frisby*, 79 F.3d at 32; s*ee also United States v. Searp*, 586 F.2d 1117, 1122 (6th Cir.1978) (holding that a nighttime search in violation of Federal Rule of Criminal Procedure 41 was nonetheless valid under the Fourth Amendment because it was executed pursuant to a valid warrant and there was no showing of bad faith on the part of the officers). Here, Defendant did in fact comply with Rule 41, providing Plaintiff with the warrant and a receipt of items seized. (ECF No. 39-6, PageID.480; ECF No. 45-3, PageID.624–25.) However, even if he had not, Plaintiff does not articulate any prejudice he experienced from the claimed irregularities. As such, Defendant did not conduct an unreasonable search in failing to provide the warrant attachments, to relay the crimes being investigated, or to describe the items sought.

More difficult is the presence of the canine unit and the alleged generalized narcotics search. Plaintiff appears to allege that Defendant is individually culpable in his capacity as the lead officer or responsible under a duty to intervene theory. However, Plaintiff provides no legal argument as to Defendant's culpability under a supervisory theory, nor does he provide evidentiary support detailing what Defendant's scope of authority was as the lead officer. While Defendant did admit to being the lead agent with respect to execution of the search warrant and to briefing all law enforcement officers participating in the execution (ECF No. 39-3, PageID.440), there is no record of what that status entailed. Nevertheless, Plaintiff infers from the status that Defendant was responsible for the decision to have canine unit on scene and further extrapolates that it is reasonable to attribute the conduct of the officers in verbalizing their search for narcotics to Defendant's debriefing. (ECF No. 45, PageID.612–13.)

However, in his attempts to connect Defendant to the presence of the canine unit, Plaintiff fails to squarely address what clearly established right has been violated. A body of case law exists with respect to canine sniffs and whether they constitute a search under the Fourth Amendment. *See, e.g., United States v. Reed*, 141 F.3d 644, 650 (6th Cir. 1998) (canine sniff alerting to presence of narcotics while the canine was searching for intruders was not an unlawful search or outside the scope of consent to search obtained from the homeowner); *United States v. Sharp*, 689 F.3d 616, 618 (6th Cir. 2012) (canine instinctually jumping through open car window and alerting to the presence of narcotics once inside deemed not to be an unlawful search); *Florida v. Jardines*, 569 U.S. 1 (2013) (use of drug-sniffing canine on residential porch deemed a search). An important consideration to be drawn from these cases is whether the canine

was lawfully entitled to be where it was when alerting to the presence of narcotics. Here, Plaintiff takes the position, without any legal support, that the canine unit should not have been on scene because the scope of the warrant did not include a search for narcotics. Plaintiff would essentially have the court find that the Fourth Amendment clearly establishes a right to have a search conducted without a canine unit where narcotics are not involved. The court cannot do so.

Plaintiff's argument first and foremost ignores the myriad uses for canines by law enforcement, including officer safety and alerting to the unknown presence of others in an area to be searched. It is also devoid of record support. Beyond Plaintiff's conjecture that he saw the canine sniffing in various rooms, which was informed in part by apparent hearsay from unnamed officers asking him about the presence of narcotics, there is no record evidence that Officer Jim Geary was in fact performing a narcotics search with his canine. Despite knowing of Officer Geary's identity since March of 2022 (*see* ECF No. 28) and having ample opportunity to add him as a defendant to this lawsuit with the court's permission (*see* ECF No. 34) and thereby seek discovery with respect to his role, Plaintiff has failed to do so. The burden is on Plaintiff at this juncture to demonstrate that a clearly established constitutional right exists. On this record, he falls short.

In summary, Plaintiff has failed to establish that a genuine issue of material fact exists as to whether his constitutional rights were violated by Defendant's individual conduct during the search of his residence. Plaintiff has also failed to establish that a reasonable officer would be aware of a clearly established right to not have the presence of a canine during a non-narcotics-based search. As such, Defendant is

entitled to qualified immunity on the portion of Plaintiff's individualized *Bivens* claim with respect to an unlawful search.

### b. Unlawful Seizure

Defendant also argues that he is entitled to qualified immunity as it relates to Plaintiff's claim of his direct involvement in an unlawful seizure of $3,700.00 at the conclusion of the residential search. (ECF No. 39, PageID.417.) In so arguing, Defendant makes two points. First, Defendant contends that, because Plaintiff has already pled and admitted to Modrzejewski as being the officer who actually seized the currency, the individualized analysis demanded by the qualified immunity defense would free Defendant from liability. (Id. at PageID.418.) Second, Defendant submits that there was no underlying constitutional violation because the warrant specifically allowed for the seizure of U.S. currency. (Id. at PageID.418–19.)

Plaintiff counters that a genuine issue of material fact exists as to Defendant's personal involvement in the seizure of the $3,700.00, as well as his liability under a duty to intervene theory. (ECF No. 45, PageID.605.) Specifically, Plaintiff points to documentary evidence, namely a one-page "Receipt for Cash or Other Items" signed by both Defendant and Modrzejewski, wherein the "Undetermined Amount U.S. Currency" is being "TOT Sterling Heights for Forfeiture." (ECF No. 45-6, PageID.634.) Plaintiff argues that this document, coupled with the undisputed facts that the purpose of the search was not for narcotics, no narcotics were in fact found or seized, Defendant declared he would not seize the money, and Defendant was present when Modrzejewski announced his intent to seize the money under Michigan drug forfeiture statute, could led a reasonable juror to conclude that Defendant was individually

involved in the seizure of the $3,700.00 or had a duty to intervene. Plaintiff therefore concludes that a genuine issue of material fact exists as to whether a constitutional violation occurred to his Fourth Amendment right to be free from unreasonable seizures.

The court agrees with Plaintiff. While Defendant is correct that the warrant authorized the seizure of U.S. currency, such a seizure was limited in scope to monies connected to the underlying crimes being investigated. A reasonable juror could conclude that, because Defendant himself declined to seize the money, no basis existed to seize it under the warrant's authority. Further, while Defendant has not admitted to authoring the receipts of inventory in this case, his name and signature are on the receipt presented by Plaintiff reflecting the transfer of the currency "for Forfeiture." (*See* ECF No. 39-3, PageID.440; ECF No. 45-6, PageID.634.) Though Defendant has not expressly admitted to being present when Modrzejewski announced his intention to seize the money, Plaintiff's assertion of that fact is presently uncontroverted. Furthermore, no narcotics were actually seized during the execution of the warrant, making forfeiture under Mich. Comp. Laws § 333.7521 seemingly inappropriate.[7] Thus, because a genuine issue of material fact exists as to Defendant's individualized or personal involvement in a facially unreasonable seizure, Defendant's request for a finding of qualified immunity as to the seizure is denied.

---

[7] Though no longer a legal question before the court due in part to the dismissal of Modrzejewski and presumably the court's prior ruling that Plaintiff released any claims against the City of Sterling Heights and its officers in relation to the seizure of the $3,700.00, the very fact that a release exists in this case further suggests that a question existed as to the propriety of the drug forfeiture seizure.

### c. Excessive Use of Force

Defendant next argues that he is entitled to summary judgment on Plaintiff's

*Bivens* action against him as it relates to his alleged use of excessive force with respect

to handcuffing Plaintiff. While Defendant admits that the Fourth Amendment prohibits

unduly tight or excessively forceful handcuffing in the court of a seizure, Defendant

contends that Plaintiff's claim fails for a lack of evidence as to some physical injury

resulting from the handcuffing. (ECF No. 39.) Defendant again notes that this

information was sought and not provided in discovery. (Id.)

Plaintiff counters that a genuine issue of material fact does exist as to his

individualized claim of excessive force. Specifically, Plaintiff highlights certain

statements made by Defendant with respect to the handcuffing that Plaintiff

characterizes as "contradictory." (ECF No. 45, PageID.608.) Plaintiff first draws the

court's attention to Defendant's declaration, dated August 1, 2022, wherein he admits

that Plaintiff complained that the handcuffs were too tight, that he released Plaintiff from

them to allow Plaintiff to stretch, that he reapplied the handcuffs, and finally checked the

tightness after reapplication. (ECF No. 39-6, PageID.480.) Plaintiff then points to

Defendant's contemporaneous report from the warrant execution, dated December 19,

2017, wherein he makes no mention of the aforementioned events but instead indicates

as follows: "While agents were searching the residence, TFO Lindblade was advised

that MORENO began making statements that agents were mistreating and abusive

towards him. TFO Lindblade spoke with MORENO several times throughout the search

and he did not advise that he was being mistreated." (ECF No. 46-9, PageID.643.)

Plaintiff himself avers that he complained specifically to Defendant, as well as other

officers, regarding the tightness of the handcuffs without response. (ECF No. 45-3, PageID.624.) Plaintiff further avers that the tightness of the handcuffs caused him pain, cut off his circulation, and caused marks to appear on his wrists for several days following the search, all of which is sufficient to create a genuine issue of material fact as to injury. (Id.)

"The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure." *Morrison v. Bd. Of Trustees Of Green Tp.*, 583 F.3d 394, 401 (6th Cir. 2009) (internal citations omitted). A claim for excessive use of force is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Reasonableness "requires careful attention to the facts and circumstances of each particular case." *Id.* at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* There is a "built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002). The reasonableness standard focuses on the specific moment in time the officer made his decision to use force and the information he had at that time. *Bouggess v. Mattingly*, 482 F.3d 886, 889 (6th Cir. 2007). It does not consider "whether it was reasonable for the officer 'to create the circumstances'" and "it does not require them to perceive a situation accurately." *Thomas v. City of Columbus*, 854 F.3d 361, 365 (6th Cir. 2017) (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 915-16 (6th Cir. 2009)).

Both parties correctly cite the specific standard used in evaluating handcuff excessive force claims:

> In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced "some physical injury" resulting from the handcuffing. *See Lyons v. City of Xenia,* 417 F.3d 565, 575–76 (6th Cir.2005).

*Morrison*, 583 F.3d at 401. Further, Plaintiff cites *Morrison* as an example of how to properly analyze the proof required at summary judgment for physical injury:

> Our decision in *Martin v. Heideman,* 106 F.3d 1308 (6th Cir.1997), demonstrates that the injury required to sustain a successful handcuffing claim is not as demanding as Officer Celender would suggest. In *Martin,* the plaintiff complained of excessive force by being handcuffed so tightly that his hands had become numb and swollen during a twenty-minute ride to the jail and a fifteen-minute wait in a holding cell. *Id.* at 1310. We reversed the district court's award of qualified immunity on directed verdict, ruling that a "genuine issue of material fact exist[ed] as to whether [the defendant police officer] used excessive force under the circumstances." *Id.* at 1313. We reached this conclusion notwithstanding the absence of evidence that Martin continued to suffer numbness and swelling after the handcuffs were removed, or otherwise incurred injury. *See id.* at 1312–13.

> Given the injuries alleged in *Martin,* we are unwilling to rule as a matter of law that Officer Celender's handcuffing did not amount to an excessive use of force. *See also Baskin v. Smith,* 50 Fed.Appx. 731, 737–38 (6th Cir. 2002) (denying qualified immunity on summary judgment for excessive force when plaintiff alleged handcuffing for forty-five minutes to an hour caused pain and pinched his wrists until they bled). In other words, the bruising, skin marks, and attendant pain allegedly suffered by Amanda during the forty to fifty minutes she was handcuffed creates a genuine issue of material fact regarding the existence of an injury.

*Id.* at 402–03.

Given the parties' respective contrary declarations, there appears to be a genuine issue of material fact as to prongs two and three of Plaintiff's handcuff excessive force claim. The parties do not dispute that this right was "clearly established" for qualified immunity purposes at the time of the warrant execution in this case. Further, Defendant concedes the first prong, namely that Plaintiff made the complaint. (ECF No. 39-6, PageID.480.) The parties then diverge in the recollection of events,

specifically whether Plaintiff's tightness complaints were addressed and whether

Plaintiff experienced some physical injury from the handcuffing. Nonetheless, Plaintiff's

declaration establishes some evidentiary basis for an ignored complaint of overly tight

handcuffs and a resultant physical injury, such that a reasonable juror could find an

excessive use of force. (ECF No. 45-3, PageID.624.) The court acknowledges that the

*Morrison* complainant had more evidence at her disposal, including other eye-witness

testimony as to her handcuffing injuries.[8] *Morrison*, 583 F.3d at 402. However, the court

declines to read *Morrison* as somehow requiring medical proof of a physical injury. As

such, summary judgment at this stage is inappropriate.

Plaintiff also appears to reference two additional excessive force claims against

Defendant individually, one related to Defendant's knee in Plaintiff's back during the

handcuffing and one related to jerking Plaintiff upward post-handcuffing that aggravated

a knee injury. However, he provides no substantive argument as to their legitimacy. In

his reply brief, Defendant contends that such actions were objectively reasonable under

the circumstances and further notes that Plaintiff did not plead allegations of excessive

force when Defendant lifted him from the ground. (ECF No. 46.) The Supreme Court

has indicated that "[n]ot every push or shove, even if it may later seem unnecessary in

the peace of a judge's chambers violates the Fourth Amendment." *Graham*, 490 U.S. at

396. The court finds here as a matter of law that Defendant's use of his knee and weight

to initially handcuff Plaintiff was not objectively unreasonable under the circumstances

---

[8] Though Plaintiff indicates that medical record evidence of his wrist injuries does not exist because the injuries were not so severe as to require medical attention, the court will at the very least warn that any such attempt to use medical evidence will likely be inadmissible as a discovery sanction.

where the officers had to forcefully breach the front door to access Plaintiff's residence. The court further finds the same with respect to Defendant's lifting Plaintiff from the ground once he was secured. Plaintiff makes no allegation that the lifting process was unnecessarily prolonged and did not allege any aggravation of prior injury in his complaint. (ECF No. 1.) Moreover, to the extent that Plaintiff attempts to rely upon his knee injury as a basis for an excessive force claim, the court bars him from doing so as a discovery sanction under Rule 37(b)(2)(A)(ii).

### 2. Count VI: Duty to Intervene

The court has already conducted significant analysis with respect to Plaintiff's Count VI claims relating to Defendant's duty to intervene. The court will note that Plaintiff concedes, in light of the dismissal of the other defendants, the only actionable duty to intervene claims are based on the alleged unreasonable search and unreasonable seizure. To establish liability for failure to intervene in another officer's unconstitutional search or seizure, the plaintiff must demonstrate that (1) the officer observed or had reason to know that an unconstitutional search or seizure was taking place, and (2) the officer had both the opportunity and the means to prevent the search or seizure from occurring. *See Bunkley v. City of Detroit*, 902 F.3d 552 (6th Cir. 2018); *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir.1982); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Mere presence during an altercation is insufficient to establish liability—the plaintiff must make some showing of "direct responsibility." *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013).

With respect to the unreasonable seizure aspect of Plaintiff's duty to intervene claim, the court's analysis is largely the same as its evaluation of Defendant's direct

liability on the matter. As such, the court will not repeat its findings. Rather, for the reasons previously mentioned, the court finds a genuine issue of material fact exists as to Defendant's duty to intervene in the allegedly unreasonable seizure of Plaintiff's $3,700.00.

With respect to the alleged unreasonable search, the court has again largely discussed the issues at play, resolving them in Defendant's favor. For much of the same reasons, Plaintiff's duty to intervene claim fails and the court will not repeat its analysis. The court will however make the general observation that Plaintiff fails to allege and properly support that Defendant was actually present for any of the questions from other officers regarding narcotics or the canine search. Rather, Plaintiff seems to rely on Defendant's lead agent status and debriefing prior to the warrant's execution as the opportunity Defendant had for intervention. The court finds this deficient. Further, while Plaintiff does not appear to make an argument supporting his allegation of an unreasonable search based on an "no-knock" entry of his residence, the court will nonetheless find that such an argument is unsupported by the facts. As Defendant argues, by Plaintiff's own admission, two to three "thunking" noises occurred before the officers breached his front door. (ECF No. 46; ECF No. 45-6, PageID.619–20.) Even when viewing the facts in a light most favorable to Plaintiff, the court finds that a reasonable juror could not conclude that a no-knock entry occurred in this case.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion is granted in part and denied in part. Remaining for resolution are Plaintiff's individualized *Bivens* actions for an unreasonable seizure and use of excessive force, as contained in Count I of his

complaint, and Plaintiff's duty to intervene *Bivens* action for an unreasonable seizure, as contained in Count VI. Accordingly,

IT IS ORDERED that Defendant's Motion for Dismissal and in the Alternative for Summary Judgment is GRANTED IN PART as to any claim of an unreasonable search contained within Counts I and VI.

IT IS FURTHER ORDERED that Defendant's Motion for Dismissal and in the Alternative for Summary Judgment is DENIED IN PART as to the individualized *Bivens* claims of an unreasonable seizure and use of excessive force contained within Count I and as to the duty to intervene *Bivens* claim of an unreasonable seizure with respect to Count VI.

s/Robert H. Cleland          /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  November 9, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 9, 2022, by electronic and/or ordinary mail.

s/Lisa Wagner           /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\EKL\Opinions & Orders\Civil\20-13292.MORENO.Opinion&OrderMTDorMSJ.EKL.docx